# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RCBA NUTRACEUTICALS, LLC,

        **Plaintiff,**

    **v.**                      **Case No. 23-CV-305**

PROAMPAC HOLDINGS, INC.,

        **Defendant.**

## DECISION AND ORDER

On March 6, 2023, plaintiff RCBA Nutraceuticals, LLC ("RCBA") filed a complaint against defendant ProAmpac Holdings, Inc. ("ProAmpac"), alleging breach of implied warranty of fitness for particular purpose (count I), breach of implied warranty of merchantability (count II), breach of contract as third-party beneficiary (count III), civil conspiracy (IV), fraudulent misrepresentation (count V), and negligence (count VI). (ECF No. 1.)

ProAmpac has moved to dismiss RCBA's complaint on the ground that this court lacks personal jurisdiction over it or, alternatively, on the ground that the complaint fails to state a claim on which relief can be granted. (ECF No. 9.) ProAmpac also asks this court to take judicial notice of RCBA's "nearly identical lawsuit" in Florida state court.

(ECF No. 9 at 12.) ProAmpac's motion is fully briefed and ready for resolution. Both parties have consented to this court's jurisdiction. (ECF Nos. 4, 10.)

## 1.     Allegations in the Complaint

Because this matter is before the court on defendant ProAmpac's motion to dismiss, the information in this section comes directly from RCBA's complaint, the allegations in which the court accepts as true. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

RCBA is a Florida limited liability company in the nutritional supplement business that sells its supplements in plastic zipper bags. (ECF No. 1 at ¶¶ 1, 9, 15.) It is owned by two individuals, Ronnie Coleman and Brendan Ahern, neither of whom are citizens of Wisconsin. (ECF No. 1 at ¶ 2.) Until 2016 RCBA had purchased the plastic bags used to package its "King Mass XL" supplement product from a Chinese manufacturer. (ECF No. 1 at ¶ 16.) Beginning in late 2016 RCBA started looking to shift its manufacturing operations to an American-based company that could produce a higher quality flexible packaging product. (ECF No. 1 at ¶¶ 20-21.)

In October or November of 2016 nonparty Western Packaging, Inc. ("Western"), a Texas corporation, offered to manufacture the packaging for RCBA's King Mass XL product. (ECF No. 1 at ¶ 22.) Western shared a common ownership with another nonparty company, PolyFirst Packaging, Inc. ("PolyFirst"), a Wisconsin corporation whose principal place of business was in Hartford, Wisconsin. (ECF No. 1 at ¶¶ 4, 24.)

Western asked RCBA to provide it with a sample of RCBA's current King Mass XL packaging, a plastic zipper pouch bag. (ECF No. 1 at ¶ 28.) After assessing the sample bag, Western represented to RCBA that it could manufacture the bags; that it would manufacture the bags in its Texas facility; that the bags would be "stronger, higher in quality, of greater mil strength and thickness, more durable, fully and successfully tested with RC[BA]'s product inside the bags before mass manufacture, and/or usable and fault-free for sale to RC[BA]'s customers"; and that there would be "shorter lead times and more favorable pricing." (ECF No. 1 at ¶¶ 25, 26, 32, 34, 35, 37.)

Western was not and never had been a manufacturer of flexible packaging products. (ECF No. 1 at ¶ 27.) And at no point did Western represent to RCBA that it would subcontract out the manufacturing of the bags to PolyFirst or any other manufacturer. (ECF No. 1 at ¶ 38.) But that is what happened: from 2016 through late 2017 RCBA placed a series of written purchase orders with Western to engineer and manufacture over 180,000 zipper pouch bags for RCBA's supplement products. (ECF No. 1 at ¶ 55.) Rather than manufacture the bags itself, Western converted RCBA's purchase orders into its own purchase orders to be fulfilled by PolyFirst in PolyFirst's Hartford manufacturing facility. (ECF No. 1 at ¶ 56.)

On September 1, 2017, defendant ProAmpac, a Delaware corporation based out of Cincinnati, Ohio (ECF No. 1 at ¶ 5), purchased 100 percent of the stock, assets, and liabilities of PolyFirst. (ECF No. 1 at ¶¶ 39, 40.) Beginning on September 1, 2017,

ProAmpac assumed all duties relating to the manufacturing of RCBA's bags and began manufacturing the bags at its newly acquired facility in Hartford, Wisconsin. (ECF No. 1 at ¶¶ 43, 44.) The employees at the Hartford manufacturing plant continued to manufacture RCBA's bags, now working for ProAmpac. (ECF No. ¶ 40.)

Beginning in around July 2017 and continuing into 2018, PolyFirst and, later, ProAmpac shipped bags from the Hartford, Wisconsin manufacturing facility to RCBA's "fillers," Nutrablend Foods in Lancaster, New York, and JW Nutritional, LLC in Allen, Texas, where RCBA's nutritional products were filled into the bags. (ECF No. 1 at ¶ 63.) RCBA then shipped the finished products—the bags filled with RCBA's nutritional products—to customers and distributors worldwide. (ECF No. 1 at ¶ 66.)

In March 2018 RCBA began receiving complaints about the bags from customers and distributors. (ECF No. 1 at ¶ 69.) Specifically, the bags' seams split apart, causing RCBA's nutritional products to spill out. (ECF No. 1 at ¶ 72.) Employees at RCBA's filling facilities in New York and Texas discovered the defects. (ECF No. 1 at ¶¶ 70-71.)

RCBA has incurred substantial damages due to ProAmpac's manufacture of defective bags. (ECF No. 1 at ¶ 82.) Such damages include, but are not limited to, pulling its products from the marketplace; finding another packaging source for its products; giving refunds to customers; increasing its workforce to accommodate customer complaints and demands by customers for credits; discounting certain

products to retain its customer base; suffering decreases in sales and profits; and suffering damage to its brand image. (ECF No. 1 at ¶ 84.)

RCBA previously brought a lawsuit in Florida state court, initially naming only ProAmpac and Western as defendants (ECF No. 9-2), but later adding PolyFirst (ECF No. 9-3). ProAmpac moved to dismiss for lack of personal jurisdiction, which motion was denied by the trial court. (ECF No. 9-4 at 4.) ProAmpac appealed, and the Florida appellate court reversed the trial court's ruling, remanding with instructions to dismiss ProAmpac as a defendant for lack of personal jurisdiction. (ECF Nos. 9-4 at 15-16; 9-5 at 2-3.) Following ProAmpac's dismissal from the Florida lawsuit, RCBA brought this lawsuit.

## 2.    Analysis

ProAmpac argues that this court lacks personal jurisdiction over it and, therefore, must dismiss this case pursuant to Rule 12(b)(2). Alternatively, it argues that RCBA's six causes of action are barred by the applicable statutes of limitations and, therefore, this court should dismiss this action pursuant to Rule 12(b)(6). In the event any of RCBA's causes of action sounding in tort (counts IV, V, and VI) are not deemed untimely, ProAmpac argues that they are nonetheless barred by the economic loss doctrine and, for that separate reason, should be dismissed pursuant to Rule 12(b)(6).

### 2.1. Personal Jurisdiction

A defendant may move to dismiss a lawsuit on the ground that the court lacks personal jurisdiction over it. Fed. R. Civ. P. 12(b)(2). "A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003) (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)).

Wisconsin courts employ a two-step inquiry to determine whether personal jurisdiction may be exercised over nonresident defendants. First, the court determines whether a defendant meets any of the criteria for personal jurisdiction under Wisconsin's long-arm statute, Wis. Stat. § 801.05. *Kopke v. A. Hartrodt, S.L.R.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 408, 629 N.W.2d 662, 667. "If the statutory requirements are satisfied, the court then considers whether the exercise of jurisdiction comports with due process requirements." *Id.*

When the defendant moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(2), "[t]he plaintiff bears 'the minimal burden of establishing a prima facie threshold showing that the statutory and constitutional requirements are satisfied.'" *Englewood Mktg. Grp., Inc. v. ONL-RBW Logistics, LLC*, No. 23-C-227, 2023 WL 3061253, at *2 (E.D. Wis. Apr. 24, 2023) (quoting *Kopke*, 2001 WI 99, ¶ 8, 245 Wis. 2d at 408, 629 N.W.2d at 667). In determining whether the plaintiff has met its burden, the court may

rely on the complaint, affidavits, exhibits, or other evidence in the record, resolving any material conflicts in the plaintiff's favor. *Purdue*, 338 F.3d at 782-83.

### 2.1.1. Wisconsin's Long-Arm Statute

RCBA contends that the court has general personal jurisdiction over ProAmpac under Wis. Stat. § 801.05(1)(d), which gives the court jurisdiction over a defendant who, when the action is commenced, "[i]s engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." RCBA also contends that the court has specific personal jurisdiction under § 801.05(3), which gives the court jurisdiction "[i]n any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant," and § 801.05(5)(c), which provides jurisdiction in any action which "[a]rises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to … ship from this state goods."

General personal jurisdiction over a nonresident corporation exists "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). If a plaintiff can establish general personal jurisdiction over a nonresident, "the defendant may be brought before Wisconsin courts for claims that are unrelated to the defendant's activities in Wisconsin." *Rasmussen v. Gen. Motors Corp.*, 2011 WI 52, ¶ 15, 335 Wis. 2d 1,

12-13, 803 N.W.2d 623, 629 (citing *Insolia v. Philip Morris Inc.*, 31 F. Supp. 2d 660, 668 (W.D. Wis. 1998)). "Because general jurisdiction exists even with respect to conduct entirely unrelated to the forum state, the [United States Supreme] Court has emphasized that it should not lightly be found." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015).

Specific personal jurisdiction, on the other hand, is case-specific: "the claim for relief for which personal jurisdiction is sought must be substantially connected to or arise out of the defendant's contacts with Wisconsin." *Rasmussen*, 2011 WI 52, ¶ 15, 335 Wis. 2d at 13, 803 N.W.2d at 629 (citing *Insolia*, 31 F. Supp. 2d at 668); *see also Kipp*, 783 F.3d at 698 (providing that specific personal jurisdiction is limited to "claim[s] … linked to the [defendant's] activities or contacts with the forum" (citing *Goodyear*, 564 U.S. at 919)).

Turning directly to specific personal jurisdiction, RCBA's contract and tort claims allege that, when ProAmpac acquired PolyFirst in September 2017, it replaced PolyFirst as the manufacturer of the zipper pouch bags, assumed all duties and obligations relating to the manufacturing of RCBA's bags, and began shipping the bags from the Hartford, Wisconsin manufacturing facility. (ECF No. 1 at ¶¶ 39-45.) RCBA argues that these allegations are sufficient to confer specific personal jurisdiction under § 801.05(5)(c).

In arguing that it lacks sufficient contacts with Wisconsin to confer jurisdiction on this court, ProAmpac claims that, although it acquired PolyFirst, PolyFirst continued to manufacture RCBA's bags as a subsidiary of ProAmpac. To support its claim, ProAmpac has submitted a declaration from Ryan Fischer, the "Plant Manager" at the Hartford facility, attesting that, after ProAmpac acquired PolyFirst, PolyFirst became ProAmpac's subsidiary and continued to manufacture the bags. (ECF No. 9-1 at ¶¶ 3, 4, 8.) Because "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent," *Purdue*, 338 F.3d at 788 n.17 (citations omitted), it argues that RCBA cannot show that ProAmpac has sufficient contacts with Wisconsin to confer specific personal jurisdiction on this court.

In response to the Fischer declaration, RCBA submitted pleadings and exhibits from the lawsuit it filed in Florida against Western and ProAmpac, *RCBA Nutraceuticals, LLC v. Western Packaging, Inc.*, No. 2019-CA-787 (Fla. Cir. Ct.).[1] (ECF Nos. 12-1, 12-2, 12-3.) Included in RCBA's proffer are emails—dated October 18, 2017, and April 13, 2018—from ProAmpac employees bearing the statement, "PolyFirst is now ProAmpac," and listing ProAmpac's shipping address as "2261 Innovation Way, Hartford, Wisconsin 53027"—the address of the facility that manufactured the defective bags at issue. (ECF

---

[1] RCBA has also filed a declaration from its lawyer, stating that the proffered pleadings and exhibits are true and correct copies of those submitted in the Florida action. (ECF No. 12 at ¶¶ 1-4.) RCBA's proffered materials come from the same Florida action that ProAmpac requests judicial notice of. (ECF No. 9 at 12.) As such, the court will grant ProAmpac's request for judicial notice of the Florida action and consider RCBA's proffer in support of personal jurisdiction.

No. 12-1 at 6, 10.) There are also billing invoices and purchase orders listing ProAmpac's shipping address as the same Hartford, Wisconsin address (ECF No. 12-1 at 6, 7, 9), as well as a deposition excerpt in which Steve Randazzo, an employee at the Hartford facility, attests that as of 2018 he was employed by ProAmpac, not PolyFirst, and that, when ProAmpac acquired PolyFirst, ProAmpac began manufacturing and shipping RCBA's bags (ECF No. 12-1 at 8, 11). RCBA also submitted an excerpt from Fischer's LinkedIn page that says he has been employed by ProAmpac in Hartford, Wisconsin since December 2017 and that he was previously employed by PolyFirst from October 2014 to December 2017. (ECF No. 12-3 at 94.)

RCBA's submissions create a genuine issue of material fact as to whether ProAmpac manufactured RCBA's bags and shipped them from the Hartford, Wisconsin facility beginning in September 2017 after it acquired PolyFirst. Since factual disputes must be resolved in favor of RCBA on this motion to dismiss, *see Purdue*, 338 F.3d at 783; *see also Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) ("[W]e take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff[s]."), the court finds that in September 2017 ProAmpac—having acquired PolyFirst—began manufacturing bags for RCBA from its newly acquired Hartford, Wisconsin facility. Because RCBA's contract and tort claims arise in part out of these allegations, the court finds that RCBA has made a prima facie showing that § 801.05(5)(c) confers specific personal jurisdiction over ProAmpac.

### 2.1.2. Due Process

Turning to the due process inquiry, specific jurisdiction does not implicate due process concerns where

> (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities, and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

*Westgate Prods., LLC v. Edwards*, No. 19-C-247, 2019 WL 2411454, at *3 (E.D. Wis. June 7, 2019) (citing *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012)). As with the statutory component of Wisconsin's two-part personal jurisdiction analysis, RCBA has the burden of making a prima facie showing that this court's exercise of specific jurisdiction does not raise due process concerns. *Purdue*, 338 F.3d at 782; *Kopke*, 2001 WI 99, ¶ 8, 245 Wis. 2d at 408, 629 N.W.2d at 667.

A defendant that "deliberately has engaged in significant activities within a State … has availed himself of the privilege of conducting business there." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (internal quotations and citations omitted). The allegations in the complaint and RCBA's evidentiary proffer show that ProAmpac has continuously operated a Wisconsin manufacturing facility since it acquired PolyFirst on September 1, 2017. The contacts stemming from ProAmpac's operation of a Wisconsin manufacturing facility are sufficient to find that it has purposely availed itself of the privilege of conducting business in Wisconsin.

"Even where a defendant's conduct is purposefully directed at a forum state, the plaintiff must also show that his injury 'arises out of' or 'relates to' the conduct that comprises the defendant's contacts." *Felland*, 682 F.3d at 676 (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 708 (7th Cir. 2010)). RCBA has sufficiently alleged that its injuries result, in part, from ProAmpac's manufacturing of defective products at its Wisconsin-based facility. In other words, RCBA has made a prima facie showing that ProAmpac's contacts with Wisconsin give rise to the six causes of action in the complaint.

Finally, the court must consider whether haling ProAmpac into this court offends "traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 316. This inquiry focuses on "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp.*, 471 U.S. at 477 (internal quotations and citations omitted).

ProAmpac does not argue it would be greatly burdened if forced to litigate this case in Wisconsin. Although out-of-state defendants always face some burden, "there is no suggestion that [ProAmpac's] hardship would be any greater than that routinely tolerated by courts exercising specific jurisdiction against nonresidents." *Felland*, 682 F.3d at 677. And while RCBA and ProAmpac are foreign to Wisconsin, Wisconsin's

interest in adjudicating this dispute cannot be fairly characterized as "minimal" given that ProAmpac's conduct which underlies RCBA's claims occurred in Hartford, Wisconsin. Wisconsin certainly has an interest in insuring against the potentially actionable, local conduct of foreign corporations which choose to establish a manufacturing and shipping presence within its borders, even where that conduct is alleged to have injured a nonresident.

In sum, the court finds that RCBA has made a prima facie showing that section (5)(c) of Wisconsin's long-arm statute confers specific personal jurisdiction over ProAmpac and that this court's exercise of jurisdiction does not implicate due process concerns. Therefore, ProAmpac's motion to dismiss for lack of personal jurisdiction will be denied.

### 2.2.     Failure to State a Claim

ProAmpac alternatively argues that dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(6) because all six of RCBA's causes of action are barred by the applicable statutes of limitations. If the court finds that RCBA's tort claims are timely, ProAmpac argues that they are barred by the economic loss doctrine.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) of the Federal Rules of Civil Procedure a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

"While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) (citations omitted). When a party moves to dismiss a complaint as time-barred, "the question is only whether there is *any* set of facts that if proven would establish a defense to the statute of limitations." *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003) (emphasis in original) (citation omitted). Where "facts pleaded in the complaint establish that a claim is time barred," the claim must be dismissed. *Logan*, 644 F.3d at 582.

### 2.2.1. Wisconsin's Borrowing Statute

The Supreme Court has instructed federal district courts exercising diversity jurisdiction to apply the choice-of-law rules of the states in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S.487, 496 (1941). Thus, this court must apply Wisconsin's

choice-of-law rules to decide which state's statute of limitations applies to this dispute. *McMahon v. Pa. Life Ins. Co.*, 891 F.2d 1251, 1257 (7th Cir. 1989).

Wis. Stat. § 893.07, also known as Wisconsin's "borrowing statute," sets forth the choice-of-law rule for resolving conflicts between competing state statutes of limitations. It provides:

> (1) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state.

> (2) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies to that action has not expired, but the applicable Wisconsin period of limitation has expired, no action may be maintained in this state.

Wis. Stat. § 893.07. "Put simply, Section 893.07 requires that in a case involving a foreign cause of action, the shortest statute of limitations—whether from Wisconsin or the foreign state—must apply." *Faxon Sales, Inc. v. U-Line Corp.*, No. 17-CV-872, 2017 WL 4990617, at *3 (E.D. Wis. Oct. 31, 2017) (citing *Terranova v. Terranova*, 883 F. Supp. 1273, 1277 (W.D. Wis. 1995); *Wenke v. Gehl Co.*, 2004 WI 103, ¶¶ 14-15, 274 Wis. 2d 220, 232, 682 N.W.2d 405, 411; *Guertin v. Harbour Assurance Co. of Berm., Ltd.*, 141 Wis. 2d 622, 631, 415 N.W.2d 831, 835 (1987)). This eliminates any incentive plaintiffs might have to forum shop for a more favorable limitations period. *Guertin*, 141 Wis. 2d at 631, 415 N.W.2d at 835.

### 2.2.1.1.  RCBA's Tort Causes of Action

Under Wisconsin law, causes of action sounding in tort are considered "'foreign' for purposes of Wis. Stat. § 893.07 if the underlying injury occurred outside the state." *Meighen v. Birds Eye Food, Inc.*, No. 12-CV-368, 2013 WL 12181034, at *2 (E.D. Wis. Feb. 26, 2013) (citations omitted); *see also Guertin*, 141 Wis. 2d at 631, 415 N.W. at 834 ("[I]n a tort action the place of injury determine[s] where the cause of action arose, and therefore, which statute of limitations ought to be applied under Wisconsin's borrowing statute.").

In *Terranova v. Terranova*, 883 F. Supp. 1273 (W.D. Wis. 1995), the court, exercising diversity jurisdiction, considered whether tort claims brought by California plaintiffs were subject to California's or Wisconsin's statutes of limitations. Observing that a tort claim is "foreign" for purposes of § 893.07 if the economic injury associated with the claim occurred outside of Wisconsin, *id.* (citing *Guertin*, 141 Wis. 2d at 631, 415 N.W. at 834), the court found that "an economic injury occurred … where the economic impact of that injury is felt." *Id.* (agreeing with the reasoning employed by federal courts in the Second Circuit, *e.g.*, *Arneil v. Ramsey*, 550 F.2d 774, 779 (2d Cir. 1997); *Walsh v. Maryland Bank, N.A.*, 806 F. Supp. 437, 444 (S.D.N.Y. 1992)). Applying this rule to the facts before it, the court determined that the economic injury occurred in California, where plaintiffs resided. *Id.* ("[T]o the extent plaintiffs are poorer, they are poorer Californians."). The court found that, under § 893.07, each tort claim was a "foreign" (specifically, a

California) cause of action because "plaintiffs' injuries were received only in California, the place of their residence." *Id.* And because the California statutes of limitations applicable to each tort claim had expired, the plaintiffs' tort claims were time-barred under § 893.07(1). *Id.* at 1281.

ProAmpac argues that RCBA's three tort claims are "foreign" (specifically, Florida) causes of action because RCBA's economic injuries (if there were any) were felt—and, therefore, occurred—in Florida, where RCBA is incorporated and has its principal place of business. (ECF No. 9 at 28.) Because RCBA's tort claims are Florida causes of action, and the Florida statutes of limitations applicable to the tort claims have all expired, ProAmpac contends that RCBA's tort claims are time-barred under § 893.07(1).

"RC[BA] is a Florida limited liability company with a principal place of business located in Seminole County, Florida." (ECF No. 1 at ¶ 1.) As such, if there are economic injuries associated with RCBA's tort claims, they occurred in Florida. *See Studio & Partners, s.r.l. v. KI*, No. 06-C-628, 2007 WL 3342597, at *3 (E.D. Wis. Nov. 7, 2007) (finding on defendant's motion for summary judgment that the economic injuries occurred in Italy because the plaintiff, an Italian company, felt the economic impact of its injuries in Italy). Because any related injuries occurred in Florida, RBCA's tort claims are "foreign" (specifically, Florida) causes of action. *Terranova*, 883 F. Supp. at 1279.

Having determined that RCBA's three causes of action sounding in tort are Florida causes of action, this court must determine which statute of limitations applies to each claim, when the applicable limitations periods began to run, and whether those limitations periods have expired. While the applicable limitations periods will come from either Florida or Wisconsin—whichever state's limitations period is shorter, *see* § 893.07—Wisconsin tolling law governs when the limitations period began accruing and whether the period has expired. *See Scott v. First State Ins. Co.*, 155 Wis. 2d 608, 619, 456 N.W.2d 152, 157 (1990).

RCBA's civil conspiracy claim (count IV) alleges that, in late 2016 and into 2018, Western, PolyFirst, and, later, ProAmpac "entered into a fraudulent scheme and agreement to mislead and rip-off RC[BA]." (ECF No. 1 at ¶ 109.) The "fraudulent scheme" consisted of Western and PolyFirst making fraudulent statements and omissions to RCBA regarding their ability to produce custom zipper bags in order to induce RCBA into entering into agreements with them, despite Western and PolyFirst knowing that they lacked the capability and wherewithal to produce defect-free bags. (ECF No. 1 at ¶¶ 112-26.) When ProAmpac acquired PolyFirst in September 2017, it "affirmatively entered the same fraudulent scheme and conspiracy to mislead and rip-off RC[BA]." (ECF No. 1 at ¶ 109.) ProAmpac's civil conspiracy to defraud RCBA ultimately resulted in the defective bags "bursting … in the marketplace," causing

RCBA to withdraw its product and to give refunds to customers who had purchased the defectively packaged product. (ECF No. 1 at ¶¶ 75, 82, 84, 124-30.)

Under Florida law, a claim for civil conspiracy has a four-year statute of limitations. Fla. Stat. § 95.11(3)(p). Under Wisconsin law, "civil conspiracy is not a separate cause of action, but rather a theory of liability." *Ferris v. Location 3 Corp.*, 2011 WI App 134, ¶ 9, 337 Wis. 2d 155, 163-64, 804 N.W.2d 822, 826 (citing *Segall v. Hurwitz*, 114 Wis. 2d 471, 481, 339 N.W.2d 333, 338 (Wis. Ct. App. 1983) ("It is the tort, and each tort, not the conspiracy, that is actionable." (citing *Onderdonk v. Lamb*, 79 Wis. 2d 241, 246, 255 N.W.2d 507, 509 (1977))). Because RCBA alleges that ProAmpac engaged with Western and PolyFirst in a civil conspiracy to fraudulently misrepresent their ability to manufacture its bags, Wisconsin's statute of limitations for fraud applies to RCBA's civil conspiracy claim. (ECF No. 1 at ¶¶ 107-30.)

In Wisconsin, fraud has a three-year statute of limitations, which "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." Wis. Stat. §§ 893.93(1m), (1m)(b). To trigger the three-year limitations period, "it is not necessary that a defrauded party have knowledge of the ultimate fact of fraud. What is required is that it be in possession of such essential facts as will, if diligently investigated, disclose the fraud." *Koehler v. Haechler*, 27 Wis. 2d 275, 278, 133 N.W.2d 730, 732 (1965).

In Wisconsin, a fraudulent misrepresentation claim requires proof that the defendant knowingly made a false representation with the intent to deceive or induce the plaintiff to act on it to its detriment or damage. *See Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 13, 270 Wis. 2d 146, 157, 677 N.W.2d 233, 239. Thus, RCBA's civil conspiracy claim did not begin accruing until it discovered facts which demonstrated ProAmpac's knowledge of its inability to produce the bags according to RCBA's required specifications.

Having reviewed RCBA's complaint in this action (ECF No. 1), its initial complaint in the Florida action (ECF No. 9-2), and its third amended complaint in the Florida action[2] (ECF No. 9-3), this court cannot determine when RCBA discovered the facts demonstrating that ProAmpac knew it lacked the capability and wherewithal to produce its bags. RCBA filed its initial complaint in the Florida action in February 2019, bringing a claim of negligence against ProAmpac for negligently manufacturing its bags, and a claim for breach of implied warranty of merchantability against Western for its role in facilitating the agreements concerning the sale of the defective bags. (ECF No. 9-2 at ¶¶ 13-22.) While RCBA's initial complaint in the Florida action is devoid of allegations sounding in fraud, its third amended complaint in that action—filed in April 2021—alleges a claim for civil conspiracy to defraud which is nearly identical to the civil conspiracy claim in its complaint before this court. (*Compare* ECF No. 1 at ¶¶ 107-30,

---

[2] ProAmpac submitted with its motion to dismiss RCBA's initial complaint and third amended complaint from the Florida action; it did not provide RCBA's second amended complaint from that action.

*with* ECF No. 9-3 at ¶¶ 114-24.) The court cannot tell when RCBA discovered the facts giving rise to its civil conspiracy claim, although the absence of such a claim in its initial complaint in the Florida action suggests it was sometime after February 2019. If RCBA discovered those facts—thereby starting the clock on its civil conspiracy claim—before March 6, 2020 (three years before it filed its complaint in this court), then its civil conspiracy claim would be time-barred under the applicable three-year statute of limitations. But if RCBA discovered those facts *after* March 6, 2020, then its civil conspiracy claim would be timely. Because it is unclear when RCBA discovered the essential facts giving rise to its civil conspiracy claim, the court cannot dismiss that claim as time barred on this motion to dismiss.

RCBA's fraud claim (count V), like its civil conspiracy claim, alleges that ProAmpac knowingly misrepresented to RCBA "that it had a manufacturing plant and personnel with the requisite capability, skill, experience and/or prior success to make defect-free custom bags or pouches for RC[BA] at Poly[First's] and later Pro[Ampac's] facility in Hartford, Wisconsin." (ECF No. 1 at ¶¶ 132-33.) As with RCBA's civil conspiracy claim, it is unclear when RCBA discovered the facts suggesting that ProAmpac knew it lacked the capability and wherewithal to produce its bags. As such, the court also cannot conclude that RCBA's fraudulent misrepresentation claim is time barred.

Finally, RCBA alleges ProAmpac was negligent in designing and manufacturing the bags. (ECF No. 1 at ¶ 138.) Under Florida law, an action for negligence has a four-year statute of limitations, Fla. Stat. § 95.11(3)(a), which, under Wisconsin law, begins to accrue on the date the injured party discovers, or with reasonable diligence should have discovered, the nature and cause of the injury resulting from the defendant's negligence. *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 314-15, 533 N.W.2d 780, 785 (1995). The latest this could have been was February 22, 2019, on which date RCBA filed its initial complaint in Florida state court, charging ProAmpac with negligently designing and manufacturing the bags. (*Compare* ECF No. 9-2 at ¶¶ 13-16, *with* ECF No. 1 at ¶¶ 136-41.) Because RCBA filed its lawsuit in this court on March 6, 2023—more than four years after RCBA initially sued ProAmpac for negligence on substantially similar allegations—its negligence claim (count VI) is time-barred.

### 2.2.1.2.        RCBA's Contract Causes of Action

Under Wisconsin law, causes of action sounding in contract are "foreign" for purposes of § 893.07 if "the final significant event giving rise" to the cause of action occurred outside the state of Wisconsin. *Abraham v. Gen. Cas. Co. of Wis.*, 217 Wis. 2d 294, 296, 576 N.W.2d 46, 48 (1998) (citing *Terranova*, 883 F. Supp. at 1281).

In *Haley v. Kolbe & Kolbe Millwork Co., Inc.*, No. 14-cv-99, 2015 WL 3774496 (W.D. Wis. June 16, 2015), the court, exercising diversity jurisdiction, considered whether breach of warranty claims brought by three plaintiffs, residing in Michigan,

Pennsylvania, and Ohio, respectively, were subject to the statutes of limitations of the plaintiffs' respective home states or Wisconsin. *Id.* at *6-7. The claims concerned the defendant's "no defect express warranty," which guaranteed the plaintiffs that the windows they purchased from the defendant would remain "defect free" for a ten-year period from the date of purchase. *Id.* at *5. In Wisconsin, such warranty claims had a six-year statute of limitations, whereas in each of the plaintiffs' home states a four-year statute of limitations applied. *Id.* at *6. The court recognized that, "[i]n the contracts context, a cause of action is 'foreign' [for purposes of § 893.07] when 'the final significant event giving rise to a suable claim occurs outside the state of Wisconsin.'" *Id.* at *7 (quoting *Abraham*, 217 Wis. 2d at 311, 576 N.W.2d at 53-54 (internal citation omitted)). The court determined that, for purposes of the plaintiffs' no-defect warranty claims, the final significant event was the failure of the windows, which occurred in the plaintiffs' home states. *Id.* at *7. Therefore, the claims were "foreign" for purposes of Wisconsin's borrowing statute, and the court concluded that the claims were subject to the shorter, four-year statutes of limitations applicable in the plaintiffs' home states. *Id.*

ProAmpac argues that RCBA's three contract claims are "foreign" because the claims are premised on RCBA's allegations that ProAmpac designed and manufactured defective bags, which defects RCBA alleges it first discovered when it received the defective bags in Texas and New York, where the bags were filled with RCBA's nutritional products. (ECF No. 1 at ¶¶ 71, 90, 97, 105.) It contends that, because New

York and Texas both have a four-year statute of limitations for claims governed by Article 2 of the Universal Commercial Code (UCC), all three of RCBA's contract claims are time-barred.

RCBA's contract causes of action all rely on allegations that the bags that ProAmpac shipped to RCBA were defective—specifically, that they were not fit for their intended purpose (count I), not of merchantable quality (count II), and defective and structurally unfit (count III). (ECF No. 1 at ¶¶ 89-90, 96-97, 105.) RCBA alleges that it first discovered the defects when it received the bags in Lancaster, New York and Allen, Texas, where the defective bags were filled with RCBA's nutritional products. (ECF No. 1 at ¶¶ 63, 71, 89-90, 96-97, 105.) The failure of the bags—specifically, "the [bags'] plastic edges or seams burst[ing] apart [when filled with product,] causing RC[BA]'s Products to leak and pour out" (ECF No. 1 at ¶ 72)—was the final significant event giving rise to the contract and warranty-based claims. Because the bags failed in RCBA's New York and Texas filling centers, the claims are "foreign" causes of action for purposes of Wisconsin's borrowing statute.

In Wisconsin, the statute of limitations for breach of contract for sale is six years. Wis. Stat. § 402.725(1) ("An action for breach of any contract for sale must be commenced within 6 years after the cause of action has accrued."). In New York and Texas, the statute of limitations for breach of contract for sale is four years. Tex. Bus. & Com. Code § 2.725(a) ("An action for breach of any contract for sale must be

commenced within four years after the cause of action has accrued."); N.Y. U.C.C. § 2-725(1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."). As such, under Wisconsin's borrowing statute, RCBA's contract-based claims (counts I-III) are governed by a four-year statute of limitations. *See* Wis. Stat. § 893.07.

RCBA alleges that ProAmpac breached implied warranties of fitness for a particular purpose (count I) and of merchantability (count II) when—beginning "in about July 2017 and continuing into 2018"—it delivered the defective bags to RCBA's New York and Texas filling centers. (ECF No. 1 at ¶¶ 63, 71, 85-98.) Under Wisconsin law, "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach[,]" and "[a] breach of warranty occurs when tender of delivery is made." Wis. Stat. § 402.725(2). Because the four-year statute of limitations began accruing, at the latest, sometime in 2018, RCBA's claims for breach of implied warranties (counts I and II) are both time-barred.

RCBA's breach of contract claim against ProAmpac as a third-party beneficiary (count III) alleges that ProAmpac agreed to manufacture and deliver to RCBA bags that could be used to package RCBA's product, but instead delivered defective bags that were unfit for that purpose. (ECF No. 1 at ¶¶ 99-106.) As with RCBA's other contract-based causes of action, the latest RCBA received the defective bags was sometime in

2018. (ECF No. 1 at ¶¶ 63, 71.) Because that was more than four years before RCBA filed this action, RCBA's breach of contract claim (count III) is also time-barred.

In sum, all six of RCBA's claims are "foreign" causes of action under Wisconsin's borrowing statute, Wis. Stat. § 893.07. Having reviewed RCBA's complaint, as well as its initial and third amended complaints from the Florida action, it is apparent that RCBA's claims for breach of implied warranties (counts I and II), breach of contract (count III), and negligence (count VI) are subject to statutes of limitations that have expired and, therefore, are time-barred. But because it is unclear when RCBA's claims for civil conspiracy (count IV) and fraudulent misrepresentation (count V) accrued, the court cannot determine whether those claims are also time-barred. As such, the court cannot conclude that those two claims are barred by the applicable statutes of limitation.

### 2.2.2. Economic Loss Doctrine

ProAmpac argues that RCBA's tort claims—including the remaining civil conspiracy and fraudulent misrepresentation claims—are barred by the economic loss doctrine, which "requires transacting parties in Wisconsin to pursue only their contractual remedies when asserting an economic loss claim, in order to preserve the distinction between contract and tort." *Hinrichs v. Dow Chem. Co.*, 2020 WI 2, ¶ 31, 389 Wis. 2d 669, 687-88, 937 N.W.2d 37, 46 (citations omitted).

The doctrine is "based on an understanding that contract law and the law of warranty, in particular, is better suited than tort law for dealing with purely economic

loss in the commercial arena." *Tietsworth*, 2004 WI at ¶ 26, 270 Wis. 2d at 163, 677

N.W.2d at 242 (citation omitted). "If a [contracting party] is permitted to sue in tort

when a transaction does not work out as expected, that party is in effect rewriting the

agreement to obtain a benefit that was not part of the bargain." *Id.* (citation omitted).

Thus, the doctrine serves "to maintain the fundamental distinction between tort and

contract law," *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 403, 573 N.W.2d

842, 846 (1998), namely, that "contract law rests on bargained-for obligations, while tort

law is based on legal obligations [owed to society at large]," *Wausau Tile, Inc. v. Cnty.*

*Concrete Corp.*, 226 Wis. 2d 235, 247, 593 N.W.2d 445, 451 (1999) (citations omitted).

"Economic loss" includes both direct economic loss and consequential economic

loss. *Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 926, 471 N.W.2d 179, 181-82

(1991) (citing Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev.

917, 918 (1966)).

> Direct economic loss is the "loss of bargain," or the difference between the
> value of what is received and its value as represented…. Consequential
> economic loss includes loss of profits resulting from the inability to use
> what was bargained for…. Economic loss can be measured by repair costs,
> replacement costs, loss of profits or diminution of value….

*Stoughton Trailers, Inc. v. Henkel Corp.*, 965 F. Supp. 1227, 1230-31 (W.D. Wis. 1997)

(internal citations omitted) (citing *Northridge Co.*, 162 Wis. 2d at 926, 932-33, 471 N.W.2d

at 181-82, 184). In determining whether the economic loss doctrine applies to bar claims

sounding in tort, "a court must examine the nature of the damages complained of, the

risk that caused them to arise and how that risk impacts on the policies underlying the doctrine." *Prent Corp. v. Martek Holdings, Inc.*, 2000 WI App 194, ¶ 19, 238 Wis. 2d 777, 789-90, 618 N.W.2d 201, 206.

RCBA alleges a variety of direct and consequential economic losses which resulted from ProAmpac manufacturing defective bags. (ECF No. 1 at ¶ 84.) RCBA was free to and did, in fact, bargain with Western, PolyFirst, and ProAmpac to allocate the risk associated with the mass production of its bags. Western assured RCBA—which assurances were eventually imputed to ProAmpac (ECF No. 1 at ¶¶ 35-43)—that it would provide reliable packages that would securely hold RCBA's products, and that it would do so at a faster and cheaper rate than RCBA's previous manufacturer (ECF No. 1 at ¶¶ 22-37). These assurances gave rise to implied warranties that the packages that RCBA purchased would be fit for holding its product (count I) and would be of merchantable quality (count II). (ECF No. 1 at ¶¶ 20-45, 85-98.) In short, the bargains struck by RCBA and Western resulted in reciprocal obligations which were subsequently memorialized—either implicitly or expressly—in the parties' agreements and later imputed to ProAmpac. Because ProAmpac failed to provide bags that met the specifications that RCBA was promised, RCBA seeks to recover its economic loss under contract (count III) and warranty (counts I and II) theories. (ECF No. 1 at ¶¶ 85-106.)

RCBA argues that its tort claims fit the "other property" exception to the economic loss doctrine, which provides that "[t]he economic loss doctrine does not

apply if the damage is to property other than the defective property itself."[3] *Bay Breeze Condo. Ass'n, Inc. v. Norco Windows, Inc.*, 2002 WI App 205, ¶ 13, 257 Wis. 2d 511, 519, 651 N.W.2d 738, 742. RCBA contends that the "other property" purportedly damaged by ProAmpac's defective bags is the nutritional product packaged in ProAmpac's bags. RCBA points to its allegations that the defective nature of the bags caused its "products to leak and pour out, completely destroying [its] products." (ECF No. 11 at 18 (citing ECF No. 1 at ¶ 72).)

The "other property" exception to the economic loss doctrine has been narrowed by the "integrated systems" limitation, which provides that "[d]amage by a defective component of an integrated system to either the system as a whole or other system components is not damage to 'other property' which precludes the application of the economic loss doctrine." *Wausau Tile*, 226 Wis. 2d at 249, 593 N.W.2d 445 at 452.

In *Wausau Tile*, the plaintiff manufactured concrete paving blocks made of cement, aggregate, water, and other materials. 226 Wis. 2d at 241, 593 N.W.2d at 449. Wausau Tile sued the company it contracted to supply the cement for its paving blocks, alleging a defect in the cement caused its paving blocks to expand and crack. *Id.* at 242, 593 N.W.2d at 449. The trial court dismissed Wausau Tile's negligence and strict liability claims as barred by the economic loss doctrine. *Id.* at 243-44, 593 N.W.2d at 450. On

---

[3] RCBA does *not* argue that its civil conspiracy and fraudulent misrepresentation claims fit the narrow exception to the economic loss doctrine for fraudulent inducement claims that are extraneous to the contract. (ECF No. 11 at 17-19.) As such, the court will not consider whether that exception saves those claims from being barred by the economic loss doctrine.

appeal to the Wisconsin Supreme Court, Wausau Tile argued that the cost of having to repair and replace the paving blocks was not "economic loss" because the paving blocks were "property other than the defective [cement] product." *Id.* at 249, 592 N.W.2d at 452. The court rejected Wausau Tile's "other property" argument, observing that

> [a] product that fails to function and causes harm to surrounding property has clearly caused harm to other property. However, when a component part of a machine or a system destroys the rest of the machine or system, the characterization process becomes more difficult. When the product or system is deemed to be an integrated whole, courts treat such damage as harm to the product itself. When so characterized, the damage is excluded from the coverage of [the "other property" exception]. A contrary holding would require a finding of property damage in virtually every case in which a product harms itself and would prevent contractual rules from serving their legitimate function in governing commercial transactions.

*Id.* at 249-50, 593 N.W.2d at 452 (quoting the Restatement (Third) of Torts § 21 cmt. e (Am. L. Inst. 1997)). Thus, the court held that the paving blocks were "integrated systems comprised of several component materials, including … cement." *Id.* at 251, 593 N.W.2d at 453. Therefore, Wausau Tile's tort claims did not fit the "other property" exception to the economic loss doctrine.

As with the defective cement and the paving blocks in *Wausau Tile*, the defective bags and RCBA's nutritional product were component parts of one integrated whole. RCBA was not selling the bags; it was selling its nutritional product which happened to be packaged in the bags. Any damage to the nutritional product was a consequence of the bags splitting apart. In other words, the losses RCBA claims it suffered (having to give refunds to customers, lost sales and profits, having to discount products to retrain

its customer base, etc.) are economic losses stemming from the fact that ProAmpac's bags did not meet the specifications RCBA required and that ProAmpac guaranteed. Therefore, RCBA's alleged damage to its nutritional product is not covered by the other property exception to the economic loss doctrine. *Cf. Bay Breeze Condo.*, 2002 WI App 205, 257 Wis. 2d 511, 651 N.W.2d 738 (holding that damage to walls surrounding defective windows was not covered by the other property exception to the economic loss doctrine because the windows and surrounding area were part of one integrated structure).

In sum, any losses RCBA suffered because of ProAmpac's defective bags are properly understood as "economic losses." RCBA is, therefore, limited to contract theories of recovery. RCBA's civil conspiracy (count IV) and fraudulent misrepresentation (count V) claims are barred by the economic loss doctrine and will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS THEREFORE ORDERED** that the defendant's motion to dismiss (ECF No. 8) is **denied in part** and **granted in part**. It is **denied** with respect to defendant's claim that Fed. R. Civ. P. 12(b)(2) warrants dismissal for lack of personal jurisdiction. It is **granted** with respect defendant's claim that the complaint fails to state a claim on which relief can be granted. Plaintiff's claims for breach of implied warranties (counts I and II), breach of contract (count III), and negligence (count VI) are each barred by the applicable statutes of limitations, and its claims for civil conspiracy (count IV) and

fraudulent misrepresentation (count V) are barred by the economic loss doctrine. The Clerk is directed to enter judgment dismissing plaintiff's case with prejudice.

Dated at Milwaukee, Wisconsin this 29th day of June, 2023.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge